Good morning. Judge Branch and I have enjoyed having Judge Vinson with us this week from the Northern District of Florida. Judge, we appreciate your coming down from Pensacola to help us decide these cases this week. Thank you for inviting me. And we have three that are scheduled for oral argument this morning, and the first is Ashley Scott v. the United States. Mr. Johnson is here for Scott. Mr. Bradley is here for the government. Are you ready to proceed, Mr. Johnson? Ms. Bradley. Good morning. May it please the Court. The first thing I'd like to do is just a little record keeping. When I was reviewing this last night, I realized that in a vacuum, these spreadsheets may be a little difficult to understand some of the points that were being made, so I wanted to go through a spreadsheet real quick just to try to clarify any problems, if anybody was having, and also some insights to it. One of the things about these spreadsheets, when we make reference to the paychecks, there's two spheres of checks, but they're one account. So what Ashley Scott did is she would pull out a sequence of checks. So, like on the 2006 spreadsheet, we have a notation about the check series 7,000 to 10,000 are the majority payroll checks. Really what that's saying is the 7,000 to 10,000 are the checks that she pulled out of the normal bank account and she set aside to do payroll. This is all in the record. We'll take a look at the record. All right. To me, it just wasn't clear what that might be. The other point is that for the 2006 and 2007, when this was prepared, all of these type checks were put first, and then it dropped. So these checks go first, and then it goes back to January and starts with what I would call the normal operating checks that were a different sequence. We'll take a look at all that. And so you're here to say that when we look at the evidence in this case, in the light most favorable to the government, there was insufficient evidence to find that Ashley Scott was a responsible person within the meaning of this statute. Is that right? Yes, Your Honor. The even the ---- Let me ask you this initially. Now, this case was before us on summary judgment. On the appeal from summary judgment. And we already decided, I think, in that prior appeal that the evidence was sufficient when we said that the government had presented enough to show that, you know, she was a responsible person. And, you know, there was a genuine issue of fact, and the issue was close enough to go to the jury. So we sent it back, and the case went to the jury. And the jury found that there was enough evidence. We said it was a jury issue, and the jury found that there was enough evidence. Is there any new evidence that was presented between Scott 1 and Scott 2 at the trial that would alter that determination? Your Honor, actually in Scott 1, unfortunately I left it on the desk there, but to paraphrase, when the court discusses it, it says, it admits that she had a very limited role, and she was doing ministerial duties. And, but the government had presented enough, you know, of these little, what I would call minor factors, that it really needed to go to the jury for an overall view and the ability for it to be developed. So what we're saying is that it never got developed. What was presented in Scott 2 to the jury was even a weaker case than what the government had presented on their motion for summary judgment, even though … Well, the government presented evidence that she prepared Scott Ayer's Form 941, which reported the trust fund taxes that are owed to the government. She prepared that herself. She handled the IRS forms W-4 and W-2. She wrote checks. She had the authority to disperse corporate funds. She had influence who was hired and fired. She was the sole contact person with the accountant who prepared the company's tax returns. She was the corporate secretary. That's not enough for the jury to say that she was a responsible person? That's a hard argument to make. Well, first, I don't agree that the government established that. When you say prepare returns, Ty Scott prepared the returns. She copied them over. That's not preparing returns. Even … Did she sign the returns? She signed two of them, correct. But she prepared the other one, right? I mean, she's, I think she prepared the 2007 returns. No, that's exactly what I'm saying, Your Honor. The testimony, the trial record shows that Ty Scott prepared the returns, and because his handwriting wasn't as good as hers, he had them copied over. There's no rebuttal evidence. It was in her handwriting, let's put it that way. She did the stress. Yes, and I would point out that in my brief, I cite to the Internal Revenue Manual that says even return preparation by itself is not a sufficient factor. But again, we don't agree that she even prepared it. She performed ministerial duties. All these others are ministerial duties. The W-4, the employee fills that out. He claims the allowances, and then she takes that information and puts it into the payroll computer. That's, again, a ministerial act. Let me ask you about the indicia that was submitted to the jury in the instructions. One of those is a corporate officer, and you've challenged the instruction, which was not objected to when it was denied. How can that be plain error? Well, we're distinguishing that. That's, the cases typically deal with situations where there's an erroneous jury instruction. We had submitted proposed jury instruction. Ours was, in particular, was number seven. The government submitted their proposed jury instructions. The Judge Davis, or Adams, excuse me, then went through the various things and basically, you know, came up with his own, but... Well, assuming that it's relevant, and I think because the definition of the indicia says an officer, you need to identify that officer's responsibilities. I think it was relevant, so it was error, but you didn't object to that. So it's got to be plain error, and how is it plain error? Well, again, in the brief, we addressed that. We, there was a discussion. The government strenuously objected, so there was this dialogue going back and forth. I don't think you explained it in the brief, and that's why I'm asking you now. Yeah, well, even if the panel doesn't accept my attempt to distinguish this from an erroneous jury instruction, then, you know, we would argue it's an act of futility. The judge has already ruled. There's been this discussion. The government objected. He rules, so there's no, you know, we don't do exception to the judge's ruling anymore. You know, there's no need to keep bringing it up, particularly before a jury, you know, where it would be disruptive to the process, but it was discussed. The government did object, and the judge ended up, if not express ruling, at least a de facto ruling because he came up with his own jury instructions, which excluded this, this description of what a corporate secretary's responsibility is, and as the jury had their question at the end of the case, showed how important that jury instruction was. But assuming we're going to apply the plain error standard, how do you meet that? Pardon? Assuming we apply the plain error standard, how do you, how do you meet that standard here? Well, again, my only response to that is, you know, I can't, you know, I don't think I, I tried to distinguish it, and then it's, it's a futility, but, uh, um. Is it because your entire defense was that she was just the corporate secretary and that's a ministerial function, and that's what you wanted to argue to the jury, and had the jury heard that instruction, that she was, her role was just ministerial because she was the corporate secretary, and was denied the opportunity to make that argument to the jury because the instruction wasn't accepted? No, we have a two-pronged defense. One is, all of the testimony was she was ministerial, clerical, had no decision-making authority. The second prong is, these spreadsheets, you go pages and pages and pages where she's not writing checks. For these quarters. That's a friendly question. Pardon? You know, for these quarters, the second quarter of 2007, she wrote two checks for the quarter the jury found her liable. I am over. Does the court want me to terminate? You've reserved some time for rebuttal. Okay. Thank you, Mr. Johnson. We'll hear from the government. Ms. Bradley? Good morning, Your Honors. I'll get first to the questions with respect to the jury instructions. The government submits that this proposed jury instruction number seven, which was attributed by Ms. Scott to this court's decision in U.S. v. Falcon, isn't relevant here. That was actually a bank fraud criminal statute, and Falcon had nothing to do with this. Well, the case, obviously, was a different case. But the question of relevancy really turns on the term officer in the indicia. What is that officer's duties? And if you don't know what that duties, what those duties are, you're missing a big part of it. So, isn't that relevant? The government believes that the jury instructions that were provided to the jury by the district court adequately covered what is a responsible officer. The court, in fact, read directly from this court's 2016 opinion to describe various features from which the jury could find that Ms. Scott was a responsible officer. And again, here, counsel for the appellant had numerous opportunities to object to the proposed jury instruction the district court gave him. Well, I have that instruction, and it really doesn't define officer at all. How does it define the officer's duties? Well, I think, and hopefully it's a matter of semantics, a corporate officer is the president, the vice president, the secretary, or a treasurer. So I think there was absolutely no dispute here. Here's what it says. It says, he says, the law defines the person responsible for paying as including an officer or employee of a corporation who's under a duty to perform the act in respect of which the violation occurs. So how does that define what her officer job was? Well, again, I think there's no dispute that she was a corporate officer in that she was designated as the secretary. The facts here showed, with the guidance of this court on remand, that there were various features that established that she was a responsible party in her position as secretary. First, the court said that it could find in favor, the jury could find in favor of the government insofar as the testimony of the outside accountant, whose name was Monarchy. He was pretty clear in his testimony before the jury that Scott was the contact person for him when he was preparing payroll issues or the payroll tax returns. What was her defense at the trial? Her whole defense was that, yes, I was the corporate secretary, but my dad was in charge and he did everything. I was just, you know, performing a ministerial function. I didn't even know I was the corporate secretary. So to have that jury instruction denied, to have the jury told, this is, you know, corporate secretary just performs a ministerial function, that pretty much depleted her entire defense, didn't it? Well, I think the facts presented to the jury depleted her defense that she was ministerial insofar as for two of the quarters she actually signed the quarterly FICA trust fund tax returns. For that third quarter of 2000, I mean the second quarter for 2007, she copied over what her father gave her, but to the extent she's copying over and putting down numbers on the that year, I think the liability was in excess of $80,000 and the two other returns for which she actually admits that she signed reflecting liabilities, I think between $50,000 and $70,000. Between that, between Monarchy's testimony, he was really not an interested party here. It wasn't the testimony of the father or her brother. To the extent he testified that Ashley was the go-to person, the contact person for purposes of what he did in preparing the forms. Are there other cases where the IRS has gone after a corporate secretary as a responsible person? Off the top of my head, I can't think of one that was a corporate secretary, but again here, I think the jury recognized this was just a small company. It was just a small heating and air conditioning business. You know, her father, her brother, and her were essentially the company. Here again, Mr. Monarchy testified that the designated treasurer, whose name was Mike Jenkins, that he never had any contact with him with respect to anything. So it appears that Mr. Jenkins was probably just in title only. Again, the testimony here showed that she was able, without unfettered ability, to write checks. I don't believe there's anything in the record that her father or anybody else limited her capacity to write checks. And one thing that is a little different here, it was established below that actually Ms. Scott's company's bank account here. So she opened it. It only required one signature. As we recite in our brief, she wrote numerous checks, many to herself. She wrote checks to her mother. She actually did, for the second quarter of 2007, write a check to the IRS for federal unemployment taxes. Did the IRS in this small company deem anybody else a responsible person, or was it just Ms. Scott? I believe it was also her father, and I believe he filed bankruptcy. But we did not assert that her brother, Ryan, was a responsible officer. The facts pretty much established that he was just a field person actually doing the nitty-gritty of the heating and air conditioning business, where, by contrast, Ms. Scott here admittedly wrote the paychecks. She had signatory authority over the one bank account. The record also reflects that she printed the weekly payroll reports, and if you just look at those in the record, those do reflect for the employees, including herself, income taxes withheld, Social Security that's withheld. Well, you have a lot of standards that you have to comply with before you go after someone as a responsible person, a responsible party, and the evidence here seems to be awfully strong that the father made all the important decisions in this business, that she was made secretary when she was a teenager. She didn't even come to the office very much. She just was given things to do and write checks when he wasn't there. Is that consistent with your standards, the IRS standards for going after somebody? Well, number one, I'm not quite sure what standard the court is referring to that the government needs to meet before we find somebody responsible to assert the trust fund penalties. Here, to the extent appellant was citing the Internal Revenue Manual provision, the Internal Revenue Manual provision is not mandatory. It provides no rights for a taxpayer. Here I think the government, before they decided that Ms. Scott was responsible, again, given the indicia that this court explained in its 2016 opinion and before, that she had more rights and responsibilities than her defense was that, you know, I wasn't here, I didn't do anything. There was conflicting testimony in the record from, again, I believe it was Mike Jenkins and again the outside accountant who was testifying. There was evidence, I think, that Jenkins did not get along with the responsible party in this case, Ms. Scott. Is that right, Ms. Scott? Well, I think there was testimony to the extent that they had no love loss, but again, he was, you know, in court, attested under oath as to certain facts and circumstances and again here the record that was before the jury, again the jury heard this, so the jury was freed away the credibility of the witnesses. They could fully discredit the testimony of the father, Ty Scott, could fully disregard the testimony of Ms. Scott because obviously she was trying to get out of the taxes. How can you explain the jury's verdict? They found her responsible for one quarter in each year, 2005, 2006, and 2007. Right. Well, for the first two quarters of 2005 and 2006, there's no dispute that Ms. Scott signed the returns. Those returns were before the jury and there's no dispute that she actually signed the returns. The jury could freely deduce from her signature on those returns, which I believe are under penalty of perjury or some other strict standard, that she signed them, that you can't just then say, well, you had no knowledge of it. She signed those two returns and again for that third quarter. As the corporate secretary, I think, right? But yes, she had the authority. There's no dispute that she didn't have the authority to sign it, so she did have the record that, you know, she didn't have the capacity. There's still no dispute in the record that it only required one signature, her signature on the bank account. I don't believe that there's any evidence in the record where either she or anyone else, including her father, testified that she couldn't sign any checks above a certain amount, that she couldn't sign any non-routine amounts, and there certainly is nothing in the record that says she couldn't sign a check to the IRS, and in fact, she did sign some checks to the IRS, and again for that second quarter of 2007, she admittedly signed a check to the IRS for the federal unemployment taxes, and again, construing all this in the government's favor and the jury verdict, there was substantial evidence in the record to support the jury's finding here that Ms. Scott was a responsible officer. Again, this court found the case too close the first time around, so here the district court judge, when she did her motion for a, her rule, I guess it's 50 motion, she was just arguing the weight of the evidence. She says now it may have been different if her request for the jury instruction was not denied, and so I'm trying to figure out why we would apply plain error review to the denial of her request for that jury instruction when she proposed the instruction herself. The government objected. Right. The government objected, and the district court, there was a bench conference. The appellant was able to put forward her arguments, the government put forward their arguments. So why do we apply plain error review then? Because again, she didn't later object when the district court said, here are the instructions. The district court, I believe, specifically said. No, no, I, she needed to object to the district court's refusal to include that instruction in the jury to the extent the district court advised the parties what instruction it was going to be giving, and she failed to at those points in time say to the district court judge, you know, hey, we had this other jury instruction, I think it's important to be included. She failed to do that. There was a couple of opportunities where she could have put forth. Well, what about, what about the judges sustaining the objection the government made to the inquiry about the secretary's duties in the bylaws, which he said was not relevant? Again, with the bylaws, that had a, some sort of a title section that said secretary. Again, when that evidence came before Ms. Scott at the jury trial, the government objected, and I believe that at that point, the district court also asked counsel, after asking Ms. Scott, when was the last time you had read the bylaws, and Ms. Scott said that she hadn't read those bylaws since back at her deposition. So the district court said to counsel for the appellant, well, what's the relevancy here since she hasn't read this, obviously wasn't familiar with it at the time, that it wasn't relevant, and again, the other factors here and the other testimony over five days with nine witnesses, and I believe there were in excess of 100 exhibits before the jury who heard all of this testimony for five days concluded that, again, for the three quarters here at issue on this appeal, that Ms. Scott was a responsible party. So we ask that this court not second-guess the jury and its findings that she is a responsible person and that there is no plain error in the failure to give the jury instruction. I would only note that, again, in Ms. Scott's reply brief, we cite several decisions of this court, and VISTA marketing I know is one, and in her reply brief, and maybe she'll address it here in her rebuttal, but offered no way around the holding of this court's decisions there. So we ask that you affirm the district court's judgment here, please. Thank you, Ms. Bradley. Thank you. Thank you. We'll hear again from Mr. Johnson. Thank you. To circle back, I think it's very important, in Scott 1, that appellate panel found that, and I am going to quote, within the company, Scott's role was very limited. She did not make financial decisions or authorize the payment of any bills to vendors or creditors. She did not open closed bank accounts. Goes on and describes these ministerial functions. They were giving the government the opportunity to say, you know, can you do something with this? Because they were very disturbed that the lower court judge had ruled in the government's favor. That was based on the factual record in Scott 1. We're in Scott 2, and you had a, what, a five-day trial on this one? Right. And the evidence is worse than in Scott 1. There was nothing, the judge wouldn't even let us keep calling witnesses because he, in his own words, he said this is cumulative. The cumulative testimony was she's performing these clerical ministerial acts. So he cut it off. So what we're saying is all of the evidence establishes, there's nothing establishing that she's making the required higher-level decision-making that's necessary to hold her responsible. The 11th Circuit and all the courts say it's status, duty, and authority. Now she had the status of the corporate secretary, but we weren't allowed to present to the jury exactly what that meant. But the evidence is overwhelming. She had no duty to collect these taxes. She wasn't making the payments. She didn't have the authority to say, well, Dad, I don't think you're paying the taxes. I'm going to pay them. She didn't have that authority. And then under 6672, she's required to collect, truthfully account for, and pay over the federal withholding taxes. Again, Dad had the passwords and the user ID numbers. She's not performing this function. There's testimony by Forrest Tucker that one time he saw her... The jury was the finder of fact here, and we can't second-guess that as long as there's substantial evidence to that. What's the legal error that you're trying to base your appeal on? There are no facts showing that she had any of these responsibilities. The jury could not rationally fine for the government for these three quarters. There's nothing in the record that would support anything other than she was a clerical person. She's really a party girl. She's flitting in, flitting out, collecting the big paycheck, but you can't be liable for that. Council had mentioned the Internal Revenue Manual is not binding on the Internal Revenue Service, but if you read the Internal Revenue provisions that we put in our brief, that's just a regurgitation of the case law. Those are the standards, and the government didn't adhere to those standards in determining that she was a responsible person in going forward with the case. She signed two tax returns. One was signed on the 28th, on a Friday. Let me just say, you didn't object to this instruction. This is what the judge told the jury. Indicia of responsibility include the holding of corporate office, which she was, control over financial affairs, she signed checks, the authority to disperse corporate funds, again, she signed checks, stock ownership, she didn't have that, but the ability to hire and fire employees, apparently there was one indication that she had somebody fired, right? No. The testimony at trial was she tried to have Michael Jenkins fired, and he tried to have her filed. They were both unsuccessful, and then her boyfriend was working there for a while, and she went to daddy and tried to have him fired, and I don't remember whether she was successful or not, but that's not exercising control. Again, Jenkins tried to say that she had responsibility over other people, but everybody else that came in said no, and Jenkins tried to over-portray her, he called her office manager, but the real office manager came in and testified I was the office manager. So again, it's a two-pronged attack. There's nothing in the record showing any higher-level decision-making authority, and these spreadsheets show the checks are being written sporadically. Yeah, she, it's never been disputed that she wrote or handled most of the payroll checks, but that's a ministerial duty. We pulled out the operating checks, these are going to pay electricity and other bills other than payroll, and they're very sporadic. But you said that there's no, no reasonable jury could have found her to be a responsible person. When, when this court sent it back, we said that, that you can go to trial on ten quarters, and the jury only found that she was a responsible person for three. So doesn't that suggest that the jury did take in all of this evidence coming from both sides, and pick and choose the quarters, I mean, and very much limited it down to three? Well, if you look at the question the jury posed to the court, I think the jury, it's clear the jury didn't understand how a corporate secretary fit into the equation, and the court declined to give any further instruction. So our logical conclusion is, well, we don't really understand this, so we'll just do one, one per year, you know, that's, I think that's a very sound assumption. But again, it's all in the checks, you know, it's a visual aid that shows she wasn't doing this. Thank you. Thank you, counsel.